644 So.2d 1258 (1994)
OLD REPUBLIC INSURANCE COMPANY, et al.
v.
Tom LANIER, d/b/a J.T. Lanier & Associates, and Chattawood Insurance Company, Inc.
1921387.
Supreme Court of Alabama.
April 29, 1994.
Rehearing Denied June 17, 1994.
Richard H. Gill and J. Fairley McDonald, III of Copeland, Franco, Screws & Gill, P.A., Montgomery, for appellants.
William J. Baxley and Charles A. Dauphin of Baxley, Dillard, Dauphin & McKnight, Birmingham, for appellees.
SHORES, Justice.
This is an appeal from an order that partially denied motions to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). The basic issue presented is whether claims of fraud in the inducement and of conversion and interference with business relationships arose out of contracts containing arbitration clauses and are, thus, subject to arbitration under the FAA. We hold that the claim of conversion and interference with business relationships is not subject to the FAA.
The following facts are undisputed:
Tom Lanier, doing business as J.T. Lanier & Associates, and Chattawood Insurance *1259 Company, Inc. ("Chattawood"), sued Old Republic Insurance Company, Old Republic Union Insurance Company, Charles D. Jordan, Chancy-Stoutamire, Inc., Rickie Wayne Chancy, and Jeffrey R. Stoutamire. The disputes in this case center around three contracts containing arbitration provisions: an "agency agreement" between Lanier & Associates and Capitol Fire & Marine Insurance Company; an "agency agreement" between Lanier & Associates and Old Republic Insurance Company; and a "quota share reinsurance agreement" between Chattawood Insurance Company and Capitol Fire & Marine Insurance Company.[1] In count one, Lanier basically alleged fraud in the inducement of his agency contracts with the insurance companies, contending that Old Republic Insurance Company ("Old Republic"), Old Republic Union Insurance Company ("Old Republic Union"), and Charles D. Jordan misrepresented that Lanier would enjoy exclusive agency status in connection with an insurance program being developed to service the logging industry.[2] In count two (breach of contract), Lanier alleged that Old Republic and Old Republic Union breached their respective agency agreements with him, and that Old Republic Union breached its reinsurance agreement with Chattawood. In Count three (conversion), Lanier alleged that Old Republic and Old Republic Union converted for their own use Lanier's clients and information pertaining to those clients' accounts, thus interfering with his business relationships.[3]
In response to the complaint, Old Republic, Old Republic Union, and Jordan moved the trial court to stay the action and to compel arbitration pursuant to the Federal Arbitration Act. Specifically, the appellants contended that each agreement contained an arbitration provision obligating the parties to submit to arbitration any dispute arising out of the particular agreement at issue. On May 13, 1993, the trial court granted the motion to stay and ordered arbitration as to the breach of contract claims, but denied the motion as to the claims of fraud in the inducement and of conversion and intentional interference with business relationships.[4] Old Republic Insurance Company, Old Republic Union Insurance Company, and Charles D. Jordan appeal, arguing that the trial court impermissibly restricted the arbitration clauses in question.[5]
The parties present a single issue on appeal: Do the disputes between the parties fall within the arbitration provisions of their contracts? If so, the FAA will apply. In this case, the appellants argue that the arbitration clauses are broad and were designed to cover any disputes between the parties. On the other hand, the appellees argue that the language of the arbitration clauses limits the scope of disputes to which arbitration was intended to apply. The parties dispute *1260 what claims or collateral issues were covered by the arbitration provisions of the contracts.
Under Alabama law, the specific enforcement of a predispute arbitration agreement violates public policy unless federal law preempts state law. See § 8-1-41(3), Ala. Code 1975; Wells v. Mobile County Bd. of Realtors, Inc., 387 So.2d 140, 144 (Ala.1980); Bozeman v. Gilbert, 1 Ala. 90, 91 (1840). "However, if an arbitration agreement is voluntarily entered into and is contained in a contract that involves interstate commerce, then the FAA preempts state law and renders the agreement enforceable." Allied-Bruce Terminix Companies, Inc. v. Dobson, 628 So.2d 354, 355 (Ala.1993), cert. granted, ___ U.S. ___, 114 S.Ct. 1292, 127 L.Ed.2d 646 (1994) citing A.G. Edwards & Sons, Inc. v. Syvrud, 597 So.2d 197 (Ala. 1992); see, Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala.1983), vacated, 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984).
On appeal, the parties do not argue that these contracts do not evidence a transaction involving interstate commerce. "Therefore, the policies and provisions of the FAA govern all questions of the validity, interpretation, construction, and enforceability of the arbitration agreement." Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344 (Ala.1993). The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Whether arbitration applies to a dispute between parties "is to be determined by the contract entered into by the parties." Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers Int'l, 370 U.S. 254, 256, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474 (1962). Therefore, "a party cannot be required to submit to arbitration any dispute he has not agreed to submit." A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 362 (Ala.1990). In the event of ambiguity or uncertainty over applicability of an arbitration clause, the strong Federal policy embodied in the Federal Arbitration Act requires a reviewing court to resolve any ambiguities or uncertainties in favor of arbitration. Volt Info. Services, supra, 489 U.S. at 475, 109 S.Ct. at 1253-54. In addition, "[t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the interest of the parties." Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419-20 (11th Cir.1990).
Our analysis must, therefore, begin with the language of the arbitration provisions. Article IX of the agency contract between Old Republic and J.T. Lanier & Associates, in pertinent part, reads as follows:
"As a condition precedent to the institution of any action at law or in equity hereon, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in the City of Chicago, Illinois, unless otherwise agreed."
(C.R. 54.)[6] Article XVII of the "Quota Share Reinsurance Agreement" between Chattawood and Old Republic Union states in pertinent part:
"(a) As a condition precedent to any right of action hereunder, any dispute arising out of the Agreement shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire, meeting in the City of Chicago, Illinois unless otherwise agreed."
(C.R. 69.)
The trial court narrowly construed the arbitration clauses, holding the following:
"1. The language of Article IX of the Agency Contract is narrowingly [sic] drawn and the arbitrable matters are restricted to disputes or controversies relating to interpretation of the Agency Agreement and matters of performance. Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, Int'l, Ltd., 803 F.Supp. 1358 (N.D.Ill. *1261 1992). Therefore, the only claim which is subject to arbitration is the claim for breach of contract, and the claims for fraud in the inducement, conversion and intentional interference with business relationships are not subject to arbitration.
"2. The same reasoning and holding applies to the language in Article XVII of the Quota Share Reinsurance Agreement. In addition, the Court finds that the reinsurance agreement has a `slight' nexus with interstate commerce; therefore, matters relating to its interpretation and performance under it are subject to arbitration."
(C.R. 121.)[7]
The trial court based its holding on Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, Int'l, Ltd., 803 F.Supp. 1358 (N.D.Ill.1992). The language of the arbitration provision interpreted in Sweet Dreams was as follows: "Any disputes arising out of the agreement shall be settled and determined by [arbitration]." Sweet Dreams, 803 F.Supp. at 1359. In that case, the district court held that the agreement to arbitrate was limited to matters involving contract interpretation or performance when it referred to controversies under or arising out of the contract. This narrow interpretation of the arbitration provision was reversed by the Court of Appeals for the Seventh Circuit in Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639 (7th Cir.1993).
The Seventh Circuit held that "any dispute between contracting parties that is in any way connected with their contract could be said to `arise out of' their agreement and thus be subject to arbitration under a provision employing this language." Id. at 642. Based upon this broad interpretation and the federal presumption in favor of arbitration, the Seventh Circuit concluded that the fraudulent inducement count and the intentional interference with business relationships count were "related to the subject matter of the arbitration clause and [were] subject to arbitration under it." Id. at 643. The arbitration provisions at issue in this case specifically state that "any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration." Count one of Lanier's complaint basically alleges fraud in the inducement, and count three alleges conversion and intentional interference with business relationships.
However, we disagree with the Seventh Circuit's broad interpretation of when the FAA should apply. We consider that interpretation to be contrary to our strong public policy against the use of predispute arbitration agreements, and we reject the reasoning of Sweet Dreams. Rather, we find the interpretation of the Ninth Circuit Court of Appeals as to when the FAA should apply, as set forth in Mediterranean Enterprises, Inc. v. Ssangyong, 708 F.2d 1458 (9th Cir.1983), to be compelling.
The determination of whether the FAA applied to compel arbitration of the dispute in Mediterranean turned on the interpretation of the language of the arbitration clause itself, as was the case in Sweet Dreams. The arbitration provision interpreted in Mediterranean stated: "Any disputes arising hereunder or following the formation of joint venture shall be settled through binding arbitration...." 708 F.2d at 1461. The Ninth Circuit suggested an equation between the use of the phrase "arising hereunder" and the use of similar language in other arbitration provisions that referred to disputes or controversies "under" or "arising out of" the contract containing the arbitration clause. That court agreed with the argument that "the phrase `arising hereunder' means `arising under the terms of the contract itself' and was not intended to cover `matters or claims independent of the contract or collateral thereto,'" Id. at 1463, and the court presented the following analysis:

*1262 "We interpret `arising hereunder' as synonymous with `arising under the Agreement [containing the arbitration clause].' The phrase `arising under' has been called `relatively narrow as arbitration clauses go.' Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359, 364 (S.D.N.Y.1966). In In re Kinoshita & Co., 287 F.2d 951, 953 (2d Cir.1961), Judge Medina concluded that when an arbitration clause `refers to disputes or controversies "under" or "arising out of" the contract,' arbitration is restricted to `disputes and controversies relating to the interpretation of the contract and matters of performance.' Judge Medina reasoned that the phrase `arising under' is narrower in scope than the phrase `arising out of or relating to,' the standard language recommended by the American Arbitration Association. Id.

"In a recent case, a district court amplified Judge Medina's reasoning. In Michele Amoruso E Figli v. Fisheries Development Corp., 499 F.Supp. 1074, 1080 (S.D.N.Y.1980), the court discussed the Supreme Court's interpretation of an arbitration clause, noting that `arising out of or relating to this agreement' had been labelled a `broad arbitration clause.' Id. (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270, 1274 (1967)). The court went on to say that in the case before it, `the clause is limited to differences or disputes "arising out of this Agreement"; notably, it omits reference to disputes "relating to" the agreements. The omission is significant in the Second Circuit.' Michele Amoruso E Figli, 499 F.Supp. at 1080.
"The omission should be significant in this circuit as well.... We have no difficulty finding that `arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself."
Mediterranean Enterprises, Inc. v. Ssangyong, 708 F.2d at 1464.
To comport with our strong public policy against arbitration, we must adopt a narrow standard for determining when the FAA applies, rather than a broad standard such as the one in Sweet Dreams. Therefore, we agree with, and explicitly adopt, the reasoning set forth in Mediterranean Enterprises and in Michele Amoruso E Figli.
In light of our interpretation of the arbitration provisions at issue here, we must next decide whether the trial court erred when it refused to submit the fraud and the conversion and interference with business relationships counts to arbitration. To do so, we must determine the extent to which these counts against the appellants "refer to disputes or controversies relating to the interpretation and performance of [each respective] contract itself." Mediterranean Enterprises, supra, at 1464.
Count one, alleging fraud in the inducement of the agency contracts between Lanier and Old Republic and between Lanier and Old Republic Union, falls within the scope of the arbitration clauses. In the seminal case of Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), Prima Paint sought rescission of a contract on the grounds that it had been procured by fraud. The United States Supreme Court, in holding the dispute subject to arbitration, stated:
"[I]f the claim is fraud in the inducement of the arbitration clause itselfan issue which goes to the `making' of the agreement to arbitratethe ... court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the... court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that ... [a] court may consider only issues relating to the making and performance of the agreement to arbitrate."
Prima Paint, 388 U.S. at 403-04, 87 S.Ct. at 1806, 18 L.Ed.2d at 277 (footnotes omitted).
"Since Prima Paint, it has become clear that in cases involving claims of fraud in the inducement of a contract affecting interstate commerce, the court must first determine whether the fraud claim is directed solely at the arbitration clause itself. If so, the party opposing arbitration *1263 is entitled to a trial involving state law issues relating to the making of the arbitration clause."
Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d 332, 337 (Ala.1991). (Citations and explanatory statements omitted.)
"We note in this regard, that if fraud is alleged with respect to an arbitration provision itself, rather than toward the entire... agreement that encompasses it, the claimant is not forced to arbitrate the claim under the FAA. Simply stated, if the fraud question relates solely to the valid creation of the requirement of arbitration, rather than the entire ... agreement, this claim can be litigated on state law contract principles to determine if the arbitration provision is to be rescinded."
A.G. Edwards & Sons, Inc. v. Syvrud, 597 So.2d 197, 199 (Ala.1992).
Lanier alleged in count one that "authorized employees" of the appellant insurance companies misrepresented to him during negotiations leading to the execution of the two agency agreements that Lanier & Associates would be the "exclusive agency" for the logging insurance program in Alabama, Florida, and Georgia, but that he later learned of another insurance agency involved in the logging insurance program of Old Republic and that of Capitol Fire & Marine Insurance Company.[8] (C.R. 4-5). Lanier contended that he was fraudulently induced to enter into the agency contracts based on the alleged misrepresentation that Lanier & Associates would be the exclusive agent for the insurance program. Because this claim of fraud in the inducement of the agency contracts does not place in issue the making of the arbitration clauses themselves, count one is subject to arbitration under the FAA. Shearson Lehman Brothers, Inc. v. Crisp, Ms. 1910090, Aug. 14, 1992[*]; Jones, supra, 604 So.2d at 338. Therefore, the trial court erred when it refused to submit count one to arbitration. See Jones, 604 So.2d at 339-40.
Count three, alleging that Old Republic and Old Republic Union converted Lanier's clients and client information for their own use, "appears to raise issues largely distinct from the central conflict over the interpretation and performance of the [agreements themselves]." Mediterranean Enterprises, supra, 708 F.2d at 1465. Therefore, the trial court correctly refused to submit count three to arbitration.
For the foregoing reasons, the judgment of the circuit court is affirmed as to the conversion and interference with business relationships claim and reversed as to the fraud in the inducement claim, and the cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in the result in part and dissents in part.
MADDOX, Justice (concurring in the result, in part, and dissenting, in part).
The question of when and under what circumstances a dispute arises out of an agreement that involves interstate commerce and is therefore subject to the provisions of the Federal Arbitration Act ("FAA"), is one that courts have had difficulty resolving. There generally seems to be no "bright line" separating those disputes that arise out of such agreements from those that do not. This case provides no bright line.
The majority, applying what it describes as Alabama's strong public policy against arbitration, concludes that the subject agreement does not come within the terms of the FAA. My opinion of what constitutes a dispute arising out of an agreement involving interstate commerce, and, therefore, coming within the provisions of the FAA, has been stated in other cases. See, Ex parte Alabama Oxygen *1264 Co., 433 So.2d 1158 (Ala.1983) (Maddox, J., dissenting); this Court's judgment in that case was vacated by the United States Supreme Court and the cause was remanded to this Court, York International v. Alabama Oxygen Co., 465 U.S. 1016, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984). See this Court's later opinion in Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala.1984) (on remand from the United States Supreme Court), adopting my dissent in the original proceeding (433 So.2d at 1168); and see Ex parte Costa & Head (Atrium), Ltd., 486 So.2d 1272 (Ala.1986), which I joined.
Congress passed the FAA in 1925 out of a desire to overcome the common-law judicial hostility toward arbitration; Congress provided that agreements to arbitrate shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2 (1988). Section 2 of the FAA, overturning the judicial presumption against agreements to arbitrate, applies to any "maritime transaction or ... transaction involving commerce." In Moses H. Cone Mem. Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), the Supreme Court of the United States stated that § 2 of the FAA stands for "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Therefore, I am of the opinion that if the contract involved is one involving interstate commerce and the contract contains an arbitration agreement voluntarily entered into by the parties, federal policy favoring arbitration agreements must be applied, notwithstanding what the majority refers to as "our strong public policy against the use of predispute arbitration agreements." 644 So.2d at 1261.
The Supreme Court of the United States stated in Moses H. Cone Mem. Hospital, 460 U.S. at 24-25, 103 S.Ct. at 941, 74 L.Ed.2d at 785, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Therefore, I cannot agree with the majority's interpretation of the language of the arbitration clauses to deny the benefits of the FAA to the party asserting entitlement to them. The Supreme Court has stated: "An order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). The language at issue in this case is "any dispute arising out of the Agreement shall be submitted to the decision of a board of arbitration." The trial court narrowly construed this language on the basis of Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, Int'l, Ltd., 803 F.Supp. 1358 (N.D.Ill.1992), which was reversed by the Court of Appeals for the Seventh Circuit, 1 F.3d 639 (7th Cir.1993). The language of the arbitration provision interpreted in Sweet Dreams was as follows: "Any disputes arising out of the agreement shall be settled and determined by [arbitration]." Sweet Dreams, 1 F.3d at 641. The district court held that the agreement to arbitrate was limited to matters involving contract interpretation or performance when it referred to controversies arising out of the contract. The Seventh Circuit said that "any dispute between contracting parties that is in any way connected with their contract could be said to `arise out of' their agreement and thus be subject to arbitration under a provision employing this language." 1 F.3d at 642. Based upon this interpretation and the federal presumption in favor of arbitration, the Seventh Circuit concluded that the count alleging fraudulent inducement and the count alleging intentional interference with business relationships were "related to the subject matter of the arbitration clause and subject to arbitration under it." Id. at 643. The provision at issue in this case specifically states that "any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration." Count one of Lanier's complaint basically alleges fraud in the inducement and count three alleges conversion and intentional interference with business relationships.
*1265 Based upon the Seventh Circuit's analysis of the Federal Arbitration Act in Sweet Dreams, which I find very persuasive, I conclude that the disputes in this case are subject to arbitration, because they clearly "arise out of" the agreement between the parties.
I recognize that Alabama does have a strong public policy against arbitration, but I think that the majority's adoption of a standard of interpretation based upon the reasoning set forth in Mediterranean Ent., Inc. v. Ssangyong, 708 F.2d 1458 (9th Cir.1983), which in turn relied upon In re Kinoshita & Co., 287 F.2d 951 (2d Cir.1961), both of which denied arbitration, is too narrow in its scope.
The arbitration provision at issue in Mediterranean Ent. stated: "Any disputes arising hereunder ... shall be settled through binding arbitration...." 708 F.2d at 1461. The clause in Kinoshita required arbitration of "any dispute or difference [that] should arise under [the agreement]." 287 F.2d at 952. In this case, the arbitration provision, like the one in Sweet Dreams, applies to all disputes "arising out of" the agreement. The majority quotes Judge Medina's dicta in Kinoshita that suggest a synonymy between "arising under" and "arising out of." In S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190 (2d Cir.1984), the Court of Appeals for the Second Circuit re-examined Kinoshita. The Second Circuit concluded correctly, I believe, that Kinoshita is inconsistent with the federal policy favoring arbitration. 745 F.2d at 193-94. Rather than overrule Kinoshita, the S.A. Mineracao court "confine[d] Kinoshita to its precise facts." 745 F.2d at 194. As the Seventh Circuit in Sweet Dreams points out, "As a matter of `precise fact,' Kinoshita deals with the effect of `arising under' language." Sweet Dreams, 1 F.3d at 642. The arbitration clause in this case providing for arbitration of "any dispute arising out of" the contract is not within the "precise facts" of the clause in Kinoshita, providing for arbitration of "any dispute or difference [that] should arise under [the agreement]". The clause in this case is clearly different from and broader than the clause in Kinoshita. The clause in this case bears a potentially broader reading than the clause in Mediterranean Ent., which provided for arbitration of "[a]ny disputes arising hereunder" and the clause in Kinoshita, which provided for arbitration of "any dispute or difference [that] should arise under [the agreement]". As the United States Supreme Court has stated, "[a]n order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409, 1417 (1960). I believe that the majority's holding as to the claim alleging conversion and interference with business relationships is inconsistent with the federal policy favoring arbitration; therefore, I must respectfully dissent from that holding.
As to the majority's holding reversing the order of the trial court denying arbitration on the claim alleging fraud in the inducement, I concur in the result.
NOTES
[1] Old Republic Union Insurance Company was doing business under its former name of Capitol Fire and Marine Insurance Company when it entered into business relations with Lanier & Associates and with Chattawood Insurance Company.
[2] Jordan was, at the time of the alleged misrepresentation, a representative of Old Republic and an executive vice president of Capitol Fire & Marine Insurance Company.
[3] Relief is not sought from the appellants on the three remaining counts.
[4] The appellants contend that we need not address the court's denial of arbitration on the conversion and intentional interference with business relationships claim, because, after this appeal was filed, the trial court entered an order on August 6, 1993, finding the conversion and intentional interference with business relationships count to be arbitrable. Although not in the record, the August 6 order compelling arbitration must have amended the May 13 order, which indicated that the conversion and intentional interference with business relationships count was not arbitrable. However, the filing of the notice of appeal on June 15, 1993, immediately transferred jurisdiction of the May 13, 1993, order to this Court. Consequently, the trial court was without jurisdiction to amend the May 13, 1993, order. See Thames v. Gunter-Dunn, Inc., 365 So.2d 1216, 1217 (Ala.1979). Therefore, we must address the appeal from the denial of arbitration on the conversion and intentional interference with business relationships count.
[5] "Orders refusing to stay proceedings pending arbitration and orders refusing to compel arbitration are appealable. See 9 U.S.C. § 16(a)(1)(A) and (B) and A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360-61 (Ala.1990)." Continental Grain Co. v. Beasley, 628 So.2d 319, 322 n. 3 (Ala.1993).
[6] An identical provision appeared in the agency contract between Lanier & Associates and Old Republic Union. (C.R. 34.)
[7] In Ex parte Jones, 628 So.2d 316 (Ala.1993), we explicitly rejected the "slightest nexus" standard for determining when a contract involves interstate commerce under the FAA, in favor of the "contemplation" standard of Ex parte Warren, 548 So.2d 157 (Ala.), cert. denied, 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). The Warren test examines whether the parties "contemplated substantial interstate activity" at the time they entered into the contract and accepted the arbitration clause. The parties here do not dispute that the contracts involved interstate commerce.
[8] Capitol Fire & Marine was the predecessor of Old Republic Union. See footnote 1.
[*] On August 19, 1994, the Supreme Court withdrew its August 14, 1992, opinion in Shearson and substituted another one. See ___ So.2d ___ (Ala.1994).