709 So.2d 1188 (1998)
AMERICAN BANKERS LIFE ASSURANCE COMPANY
v.
RICE ACCEPTANCE COMPANY, INC.
1952061.
Supreme Court of Alabama.
January 30, 1998.
Michael L. Bell and R. Jeffery Kelsey of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellant.
Randy Myers of Richard Jordan, Randy Myers and Ben Locklar, P.C., Montgomery; and W. Sidney Fuller, Andalusia, for appellee.
*1189 KENNEDY, Justice.
Rice Acceptance Company, Inc. ("Rice"), sued American Bankers Life Assurance Company ("American Bankers"), alleging that American Bankers had committed fraudulent suppression against Rice in its handling of a dispute over a life insurance policy claim; the policy was sold by Rice and issued by American Bankers. Pursuant to a "Service Expense Reimbursement Agreement" (hereinafter "Reimbursement Agreement") executed by Rice and American Bankers, American Bankers moved to compel arbitration of Rice's fraudulent suppression claim. The trial court denied American Banker's motion to compel arbitration. American Bankers appeals from the trial court's order denying that motion. That denial of the motion to arbitrate is an appealable order. See Terminix Int'l Co. Ltd. Partnership v. Jackson, 628 So.2d 357 (Ala.1993); Ex parte Brice Building Co., 607 So.2d 132 (Ala.1992).
Rice is a consumer loan company, which, in addition to providing consumer loans, often sells credit life insurance on those loans to its customers. Rice contracted with American Bankers for Rice to sell American Bankers insurance policies on the loans. Rice, acting as American Bankers' agent, earned commissions on the policies it sold. American Bankers held commission accounts in which it reserved its agents' commissions, including those of Rice. The Reimbursement Agreement executed by Rice and American Bankers set out numerous rules concerning the policies, including the rates and amounts of commissions provided by American Bankers to Rice for the sale of the policies, as well as the manner in which policy losses and expenses were to be treated by American Bankers.
In 1994, Rice and American Bankers were sued by Geraldine Whiting, a beneficiary under a $2,500 American Bankers credit life insurance policy sold by Rice to Whiting's husband. Whiting's complaint alleged that American Bankers had wrongfully refused to pay her claim on her deceased husband's policy. Rice and American Bankers agreed to settle Whiting's claims because American Bankers admitted it had improperly handled the death claim and that the proceeds should have been paid.
Rice contends that American Bankers requested Rice to participate in the settlement by contributing approximately 18% of the settlement amount, and that American Bankers represented that it would pay the majority of the settlementapproximately $115,000.[1] However, as a result of the settlement, American Bankers debited approximately $116,949 from Rice's commission account. Rice maintains that it did not learn of this debit until after it had been made. In debiting Rice's account, American Bankers relied on a portion of the Reimbursement Agreement providing for a deduction from Rice's commission earnings of "the cumulative total of all losses and loss expenses, and claims adjustment expenses incurred."
Rice then brought this fraud action, alleging that American Bankers had deceitfully induced it to agree to paying a portion of the settlement. American Bankers moved to arbitrate Rice's claim, pursuant to the Reimbursement Agreement's arbitration provision:
"In the event of any dispute or disagreement between the parties as to the meaning or interpretation of this Agreement, or any portion thereof, which cannot be resolved by mutual agreement between the parties within thirty (30) days after such dispute or disagreement arises, then and in such event, and at the option of either party, the matter in dispute or disagreement may be put to arbitration in accordance with the rule[s] of the American Arbitration Association, and subject to applicable provisions of the statutes of the state in which the customer is domiciled dealing with arbitration...."
As noted above, the trial court denied American Bankers' motion to compel arbitration of Rice's claim. In its order denying the motion, the trial court held that the dispute was "independent of or collateral to `the meaning or interpretation' of the [Reimbursement Agreement]."
*1190 American Bankers contends that although Rice couches the dispute in terms of fraud the dispute concerns only a difference in interpretation of the Reimbursement Agreement, and, therefore, that the arbitration agreement applies to the dispute. Rice argues that the arbitration clause in the Reimbursement Agreement is a narrow one, concerning only contractual disputes, and that the noncontractual fraud claim is predominantly unrelated to the arbitration clause.
In Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the United States Supreme Court held that the Federal Arbitration Act ("FAA") governs all contracts falling within Congress's power under the Commerce Clause. Allied-Bruce Terminix substantially changed the arbitration law of this State, which had previously been declared in Ala.Code 1975, § 8-1-41(3) ("The following obligations cannot be specifically enforced: ... An agreement to submit a controversy to arbitration[.]"). The federal policy favoring arbitration was recognized by this Court in Allied-Bruce Terminix Companies v. Dobson, 684 So.2d 102 (Ala.1995), on remand following the United States Supreme Court's Allied-Bruce Terminix decision. In that opinion, this Court stated:
"`The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability.'"
684 So.2d 102, 107 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983)).
In Ex parte Gates, 675 So.2d 371 (Ala. 1996), this Court considered a petition for a writ of mandamus concerning an arbitration provision in a mobile home installment sales contract. The Gateses, as purchasers of the mobile home, made several claims against the seller and the manufacturer of the mobile home, including claims alleging that the seller had made misrepresentations and concealed material facts in order to induce the Gateses to purchase the mobile home. The arbitration provision in the contract provided for arbitration of "[a]ll disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract." 675 So.2d at 373. This Court, holding that the trial court had properly compelled arbitration of the Gateses' claims, including their fraud claims, stated:
"[T]he Gateses' claims are asserted in connection with the installment contract that sets forth the terms and conditions for financing the sale of the mobile home. The contract evidences a transaction involving interstate commerce. Thus, the FAA is applicable and preempts state law."
675 So.2d at 374-75.
The language of the arbitration provision found in the Reimbursement Agreement is clearly narrower than that in Gates. Unlike the arbitration provision in Gates, it does not broadly provide for arbitration of all disputes "related to" the Reimbursement Agreement or "relationships created" by virtue of the agreement. The arbitration provision in the Reimbursement Agreement is limited to disputes "as to the meaning or interpretation of this Agreement."
The issue presented by Rice's complaint is whether American Bankers fraudulently suppressed from Rice an intent to deduct the amount of the settlement from Rice's commission account, not whether American Bankers, pursuant to the Reimbursement Agreement, could legally deduct the settlement from Rice's commission account. Therefore, Rice's fraud claim is not subject to the narrow arbitration clause found in the Reimbursement Agreement.
In Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala.1994), the issue was whether the disputes between the parties fell within the arbitration provisions of their agreements. Identical arbitration provisions in the two applicable agreements between the parties provided that "any dispute arising out of this Agreement" shall be submitted to arbitration. 644 So.2d at 1260. We held *1191 that the "arising out of" language in the arbitration provisions was intended to cover a narrow scope of disputes, "`i.e., only those relating to the interpretation and performance of the contract itself.'" 644 So.2d at 1262 (quoting Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir.1983)). The "arising out of" language was not intended to cover matters or claims independent of, or collateral to, the contract.
The language in the arbitration clause in this present case is narrower than the "arising out of" language in Old Republic because it expressly states that "any dispute or disagreement between the parties as to the meaning or interpretation of this Agreement" is subject to arbitration. The arbitration clause is clearly limited to the "meaning or interpretation" of the contract. Resolution of the fraud claim in the instant case does not require an inquiry into the meaning of the contract or its performance, so the fraud claim is not subject to the arbitration provision. Accordingly, we affirm the trial court's order denying the motion to compel arbitration.
AFFIRMED.
COOK and BUTTS, JJ., concur.
ALMON and HOUSTON, JJ., concur specially.
SHORES, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
ALMON, Justice (concurring specially).
I agree that Rice's fraud claim is outside the scope of the Reimbursement Agreement's arbitration clause, which applies only to disputes "as to the meaning or interpretation of this Agreement." The question whether American Bankers fraudulently represented that it would pay 82% of the settlement of Ms. Whiting's claim is not a dispute as to the meaning or interpretation of the Reimbursement Agreement.
I write specially to emphasize that § 8-1-41(3), Ala.Code 1975, is still the law of this State. Except to the extent that the Supremacy Clause of the United States Constitution, art. VI, cl. 2; the Federal Arbitration Act, 9 U.S.C. § 1 et seq.; and decisions of the Supreme Court of the United States[2] bar its operation, § 8-1-41(3) continues in full force and effect. For this reason, I would also hold that § 8-1-41(3) prevents specific performance of this arbitration clause, which states that it is "subject to applicable provisions of the statutes of the state in which the customer is domiciled dealing with arbitration." An arbitration agreement will be enforced only according to its terms and the wishes of the parties. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947, 115 S.Ct. 1920, 1925, 131 L.Ed.2d 985, 995 (1995). In Fidelity National Title Ins. Co. v. Jericho Management, Inc., [Ms. 1950828, Sept. 12, 1997] (Ala.1997) (pending on application for rehearing), this Court held that the phrase "unless prohibited by applicable law" incorporated § 8-1-41(3). I would hold that the arbitration clause in the Reimbursement Agreement, by incorporating state law, incorporates § 8-1-41(3) so that this clause cannot be enforced in this State.
Finally, I am not sure that this contract is one "evidencing a transaction involving [interstate] commerce," 9 U.S.C. § 2, so as to be within the scope of the FAA at all. However, because the clause is so clearly not applicable to this dispute, I have not fully studied the question whether interstate commerce is involved in the contract between American Bankers and Rice Acceptance.
HOUSTON, Justice (concurring specially).
American Bankers Life Assurance Company, by its own admission, wrongfully refused to pay a $2,500 claim based on a policy covering the life of N.J. Timmons, the common-law husband of Geraldine Whiting. This resulted in Whiting's suing American Bankers and Rice Banking Company for fraud and American Bankers for bad faith refusal to pay a valid insurance claim. Rice had liability insurance that would pay any judgment obtained against Rice in the Whiting action up to the limit of that liability *1192 policy and would pay Rice's expenses in defending the fraud claim. American Bankers admitted to Rice that American Bankers had erred in refusing to pay Whiting, and it agreed to settle with Whiting for $140,000 if Rice's liability insurance would pay 18% of the loss. American Bankers gave Rice no indication that after it had paid the 82% of the settlement that it had agreed to pay, it would reimburse itself by taking that 82% from the commission account American Bankers held for Rice. However, American Bankers did that; and when Rice learned what American Bankers had done, Rice sued American Bankers, alleging that American Bankers had fraudulently suppressed an intent to fund its part of the Whiting settlement from Rice's commission account. The issue is not whether American Bankers, according to the terms of the "Service Expense Reimbursement Agreement," could legally deduct from Rice's commission account the 82% of the settlement; that issue, according to the Reimbursement Agreement, would have to be determined by arbitration. The issue is whether American Bankers fraudulently suppressed from Rice what it intended to do, in order to get Rice and its liability insurer to agree to settle with Whiting. As I understand Rice's contention, it is arguing that if American Bankers intended to make Rice pay the entire settlement for American Bankers' misfeasance, then American Bankers should have told Rice this. Rice's complaint is as follows:

"COMPLAINT

"Parties
"1. The Plaintiff Rice Acceptance Company, Inc., is a corporation with its principal place of business in Montgomery County, Alabama. Rice Acceptance Company, Inc., does business as Rice Banking and will hereinafter be referred to as the `Plaintiff Rice Banking.'
"2. The Defendant American Bankers Life Assurance Company of Florida, Inc., is a corporation which does business by agent in Montgomery County, Alabama. The Defendant American Bankers Life Assurance Company of Florida, Inc., will hereinafter be referred to as the `Defendant American Bankers.'
"Facts
"3. In May of 1994 Plaintiff Rice Banking and Defendant American Bankers were named as co-defendants in a lawsuit filed by Geraldine Whiting.
"4. The basis of said lawsuit was the failure of Defendant American Bankers to pay a death claim under a credit life policy underwritten by Defendant American Bankers. Said policy secured a loan made by Plaintiff Rice Banking to N.J. Timmons, the common-law husband of Geraldine Whiting.
"5. Said lawsuit claimed that Plaintiff Rice Banking represented that the policy that had been issued would pay off the loan that Mr. Timmons had with Plaintiff Rice Banking should Mr. Timmons pass away during the term of the loan. Said representation was in fact true, if the policy had been properly handled by Defendant American Bankers.
"6. Said lawsuit, in addition, claimed Defendant American Bankers breached said insurance contract and acted in bad faith in denying the claim filed ... after [Mr. Timmons's] death.
"7. In October 1994, the attorney representing the Plaintiff Rice Banking (and its liability insurance carrier) received a letter from the attorney for Defendant American Bankers, admitting that Defendant American Bankers had improperly handled the [claim based on the death] of Mr. Timmons and admitting that the claim should have been paid. Said letter also indicated that Defendant American Bankers wanted to dispose of the matter prior to discovery taking place and requested that the liability carrier of Plaintiff Rice Banking contribute in some way to the settlement.
"8. Based on Defendant American Bankers' admissions, the liability carrier for Plaintiff Rice Banking agreed to contribute only approximately 18 percent of the settlement. Plaintiff Rice Banking consented to the settlement on these terms.

*1193 "9. The case was dismissed in December 1994 after the liability carrier for Plaintiff Rice Banking paid its portion of the settlement.
"10. At the time of the settlement, Plaintiff Rice Banking had an account with Defendant American Bankers, which represented money due to Plaintiff Rice Banking based on credit life policies previously issued by Defendant American Bankers to customers of Plaintiff Rice Banking (hereinafter referred to as a `retro account').
"11. Plaintiff Rice Banking was unaware at the time it agreed to the settlement of the Whiting lawsuit that Defendant American Bankers intended to debit Plaintiff Rice Banking's retro account to pay Defendant American Bankers' portion of the settlement.
"12. In March 1995, Plaintiff Rice Banking requested a report on the retro account for the period ending December 1994 in order to prepare its year-end statements. The retro account had previously been used as an asset in the financial statements of Plaintiff Rice Banking. These financial statements appear in the prospectus issued by Rice Banking and are relied upon by prospective investors of the registered debentures of the company.
"13. Upon receipt of the report, Plaintiff Rice Banking learned for the first time that its retro commission balance had been debited in the amount of $116,949.00, which represented Defendant American Bankers' portion of the Whiting settlement plus expenses.
"14. As a result of said debit, the financial statement of Plaintiff Rice Banking has been adversely affected and said debit has not only caused plaintiff Rice Banking to lose its retro account, but has also resulted in additional expenses.
"COUNT I.
"Deceit by Fraudulent Suppression
"15. Plaintiff Rice Banking realleges and incorporates herein paragraphs one through 14 above and makes said paragraphs a part of this count.
"16. Defendant American Bankers induced Plaintiff Rice Banking to contribute to the settlement of the Whiting case by leading Plaintiff Rice Banking to believe that Defendant American Bankers was paying over 82 percent of the settlement due to Defendant American Bankers' wrongful failure to pay the legitimate claim [based on the death] of Mr. Timmons. Defendant American Bankers suppressed from Plaintiff Rice Banking that it was paying its portion of the settlement from the retro account of Plaintiff Rice Banking.
"17. Defendant American Bankers had superior knowledge of the fact that it intended to obtain its portion of the settlement from the retro account of Plaintiff Rice Banking and actively led Plaintiff Rice Banking to believe it was responsible for only 18 percent of the settlement.
"18. Defendant American Bankers had a duty to disclose to Plaintiff Rice Banking that Plaintiff Rice Banking would be paying more than 18 percent of the settlement of the Whiting case. Said duty derives from the superior knowledge of Defendant American Bankers and the relationship between the parties as co-defendants.
"19. However, Defendant American Bankers failed to make said disclosure and fraudulently suppressed said facts in order to induce Plaintiff Rice Banking to agree to the settlement and in essence pay for Defendant American Bankers' wrongdoing. As a result of said suppression of fact, the Plaintiff has been damaged.
"20. Defendant American Bankers consciously or deliberately engaged in oppression, fraud, wantonness or malice with regard to Plaintiff Rice Banking.
"WHEREFORE, Plaintiff Rice Banking demands a money judgment against Defendant American Bankers in an amount to be determined by the jury as compensatory and punitive damages together with the costs of these proceedings. The amount due the Plaintiff exceeds the minimum jurisdictional requirement of this Court."
NOTES
[1] Whiting settled her claims for $140,000.
[2] E.g., Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), and Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).