The defendants, Allied-Bruce Terminix Companies, Inc. ("Terminix Service"), and Terminix International Company ("Terminix International") appeal from an order of the trial court denying their motion to compel arbitration of the tort and breach of contract claims filed against them by Michael Dobson, Wanda Dobson, Steven Gwin, and Jan Gwin. The issue for our review is whether the arbitration clause contained in a termite bond is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").
In August 1987, Steven Gwin allowed the termite bond on his house in Fairhope, Alabama, to expire, and he purchased a replacement bond from Terminix Service. Terminix Service is an Arkansas corporation that does business in several states, including Alabama, Arkansas, Florida, Georgia, Mississippi, Louisiana, Oklahoma, and Texas. The bond was guaranteed by Terminix International, a limited partnership that has its principal place of business in Memphis, Tennessee.
In 1991, Steven and Jan Gwin agreed to sell the house to Michael and Wanda Dobson. The sales contract required the Gwins to provide written evidence from a licensed pest control company that the company had performed a visual inspection of the house and had observed no active infestation of termites or damage from active infestation. The contract also required that the termite bond be transferred to the Dobsons at the closing of the sale. Because of the existing bond on the house, Terminix Service agreed to perform the inspection and to issue the required *Page 355 
statement. At the closing, the Gwins furnished Dobson with a standard Veterans' Administration ("VA") form; the V.A. form provided that Terminix Service had observed no visible evidence of active infestation during the inspection.
The Dobsons later discovered termite damage to the house, and they brought an action against the Gwins, alleging fraud, and against Terminix Service and Terminix International, alleging fraud in connection with the representations in the V.A. form, and alleging breach of contract. The Gwins cross-claimed against Terminix Service and Terminix International. Terminix Service and Terminix International moved to stay the proceedings and to compel the Dobsons and the Gwins to submit their claims to arbitration pursuant to an arbitration clause in the bond. The trial court denied this motion, and the defendants appeal.
Predispute arbitration agreements are unenforceable under Alabama law. Ala. Code 1975, § 8-1-41. However, if an arbitration agreement is voluntarily entered into and is contained in a contract that involves interstate commerce, then the FAA preempts state law and renders the agreement enforceable. A.G. Edwards Sons, Inc. v. Syvrud, 597 So.2d 197
(Ala. 1992). The Terminix companies contend that, because the United States Supreme Court has held in Southland Corp. v.Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), that Congress's regulatory power under the FAA is co-extensive with its commerce power, this Court should apply the "slightest nexus" standard first enunciated in Ex parte Costa Head(Atrium), Ltd., 486 So.2d 1272 (Ala. 1986), to this situation. This standard provides that if the contract in question has the slightest nexus with interstate commerce, the FAA will apply.Costa Head; Ex parte Brice Building Co., 607 So.2d 132 (Ala. 1992). Terminix Service and Terminix International argue that, because they are out-of-state entities, and because some of the materials used in fulfilling their duties imposed by the termite bond were brought into Alabama from out-of-state, the bond has at least a "slight nexus" with interstate commerce.
We need not address this argument, however, in light of this Court's decision in Ex parte Jones, 628 So.2d 316 (Ala. 1993).[1] In Jones, we explicitly rejected the Costa Head
"slightest nexus" standard in favor of the standard enunciated in Ex parte Warren, 548 So.2d 157 (Ala. 1989), cert. denied,493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). We held:
 "To resolve any inconsistency or confusion generated by the existence of two different standards, and determining, as we now do, that Warren represents a more reasoned approach than the Costa standard, we overrule any case inconsistent with Warren, to the extent that it states a different standard for determining the involvement of interstate commerce."
628 So.2d at 318. The Warren standard, which was invoked inWarren to cover only the "narrow" circumstances in which Alabama residents had purchased an automobile for consumer purposes from an in-state dealership, was first set forth by Judge Lombard in a special concurrence in Metro IndustrialPainting Corp. v. Terminal Constr. Co., 287 F.2d 382 (2d Cir.), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961):
 "The significant question, therefore [in determining whether a contract evidences a transaction involving commerce], is not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity. Cogent evidence regarding their state of mind at the time would be the terms of the contract, and if it, on its face, evidences interstate traffic . . . the contract should come within § 2 [of the FAA.] In addition, evidence as to how the parties expected the contract to be performed and how it was performed is relevant to whether substantial interstate activity was contemplated."
287 F.2d at 387 (emphasis in original).
Terminix Service and Terminix International argue that the bond involves interstate *Page 356 
commerce even under the more restrictive Warren standard. In addition to the evidence cited above in support of their Costa Head argument, the Terminix companies cite the following in support of their contention that at the time they entered into the contract the parties "contemplated substantial interstate activity": Steven Gwin's testimony that he allowed his bond with a local pest control company to expire so that he could "go with a national company like Terminix"; the fact that the bond instrument showed on its face that it was executed in Memphis, Tennessee; and the fact that the bond contained a statement that it was subject to federal regulation.
A brief survey of cases from other jurisdictions that have applied the standard will be useful in determining whether the parties contemplated substantial interstate activity when they entered the termite bond.
Several cases applying the Warren standard involve contracts for the construction of large projects. In Burke County PublicSchools Board of Educ. v. Shaver Partnership, 303 N.C. 408,279 S.E.2d 816 (1981), the North Carolina Supreme Court held that a contract between a North Carolina school board and an Indiana architectural firm for the construction of school buildings did involve interstate commerce so as to be covered by the FAA. In so holding, the Court stated:
 "We do not mean to suggest that where the contracting parties are merely located in different states or where other facts tending only to show diversity of citizenship are present, the contract must necessarily be found to contemplate substantial interstate activity so as to trigger the act's applicability. Where, however, performance of the contract necessarily involves, so that the parties must have contemplated, substantial interstate activity, the contract evidences a transaction involving commerce within the meaning of the [FAA]."
303 N.C. at 418, 279 S.E.2d at 822. The Court then held that the following evidence established that when they entered into the contract the parties contemplated substantial interstate activity: certain contractual provisions called for the Indiana firm to come to the North Carolina building site for various reasons; accounting records on the project were maintained in Kansas; the Indiana firm dealt with suppliers from across the country in performing its contractual duties; and certain design work was performed by a Michigan firm. See also G.D. Searle Co. v. MetricConstructors, Inc., 572 F. Supp. 836 (N.D.Ga. 1983);Dimambro-Northend Assocs. v. Blanck-Alvarez, Inc., 251 Ga. 704,309 S.E.2d 364 (1983); University Casework Systems, Inc. v.Bahre, 172 Ind. App. 624, 362 N.E.2d 155 (1977).
Some courts have also held the FAA applicable to contracts for the construction of smaller projects. In R.J. PalmerConstr. Co. v. Wichita Band Instrument Co., 7 Kan. App. 2d 363,642 P.2d 127 (1982), the Kansas Court of Appeals held that the FAA applied to a contract for the construction of a music store. The Court held that because the store was to be built out of California redwood, the parties knew that the contract would involve interstate activity.
A smaller number of cases applying the Warren standard involve personal service contracts. For example, in Bennish v.North Carolina Dance Theatre, Inc., 108 N.C. App. 42,422 S.E.2d 335 (1992), the North Carolina Court of Appeals held that a dancer and his employer contemplated substantial interstate activity when they entered the contract, because the contract provided guidelines on air travel and the employer introduced evidence that the dancer toured outside of North Carolina for a substantial amount of the contract period. See also Erving v. Virginia Squires Basketball Club, 468 F.2d 1064
(2d Cir. 1972).
We conclude that the evidence adduced by the Terminix companies does not establish that the parties contemplated substantial interstate activity when they entered the termite bond. Initially, we note that we have held in A.J. Taft CoalCo. v. Randolph, 602 So.2d 395 (Ala. 1992) — which was decided under the Costa Head standard — that it is insufficient for the purposes of invoking the FAA merely to show that one or more of the parties to the contract is located in another state. Therefore, under the more restrictive Warren standard, the fact that the bond *Page 357 
stated that it was executed in Tennessee is not determinative. Terminix's second piece of evidence, that the bond stated that it was subject to federal regulation, is based on the following paragraph in the bond:
 "Change in Law. Terminix performs its services in accordance with the requirements of federal, state, and local law. In the event of a change in existing law as it pertains to the services promised herein, Terminix reserves the right to revise the annual extension charge or terminate this agreement."
A bare statement in the bond that Terminix adheres to the requirements of any federal law applicable to its services simply does not show that the parties contemplated that the bond would involve substantial interstate activity in any way. Unlike the contractual provisions in Bennish, supra, it certainly does not put the plaintiffs on notice of the likelihood of substantial interstate activity. Moreover, Gwin's statement that he wished to go with a "national" company is not evidence that he contemplated anything; that statement merely reflects a desire on Gwin's part to receive the added security that many people associate with a large, national company. Finally, the performance of the bond obligations did not involve interstate commerce to such a degree that the parties upon entering the contract must have contemplated substantial interstate activity. Although some materials used in fulfilling the bond obligations may have come from out-of-state suppliers, this is not analogous to those situations — such as the aforementioned construction contracts involving large projects, or contracts for personal services — where the interstate activity involved in the performance of the contract is so great that it cannot reasonably be said that the parties failed to contemplate substantial interstate activity when they entered into the contract. See Terminix Int'l Co. v. Jackson,628 So.2d 357 (Ala. 1993).
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HOUSTON, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., concurs in the result.
[1] See also Continental Grain Co. v. Beasley, 628 So.2d 319 (Ala. 1993).