This litigation has had a long and tortuous history. It began on August 20, 1991, when the plaintiffs, Mark and Laurie Jackson, sued the Terminix International Company Limited Partnership and Allied Bruce-Terminix Companies, Inc., d/b/a Terminix Service (collectively "Terminix"); George Massey; George Battle; and fictitiously named defendants. Both Massey and Battle are employed by Terminix.
The plaintiffs claimed compensatory and punitive damages for alleged fraud, misrepresentation, deceit, negligence, and breach of contract. On September 12, 1991, Terminix answered, asserting as a defense that "[a]ny controversy or claim between the purchaser of the 'Termite Protection Plan' and the [d]efendants arising out of or relating to the interpretation, performance or breach of any provision of said contract which relates to new termite damage shall be settled exclusively by arbitration."
On March 30, 1992, Terminix filed a motion to compel arbitration and to stay the circuit court proceedings until arbitration was completed, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et sec. ("FAA"), and under the arbitration clause of the Termite Protection Plan. Following a hearing, the circuit court denied the motion, and Terminix appealed to this Court. On August 13, 1993, this Court issued an opinion affirming the order of the circuit court denying the motion to stay proceedings and to compel arbitration. This Court specifically held that the Termite Protection Plan at issue did not involve interstate commerce, because this Court did not believe there was evidence that the parties contemplated substantial interstate activity when they entered into the contract. Terminix Int'l Co.Ltd. Partnership v. Jackson, 628 So.2d 357, 359 (Ala. 1993).
While this case was pending in this Court, the Mobile County Circuit Court denied a motion to compel arbitration in a similar action involving Terminix; Terminix subsequently appealed that order to this Court. See Allied-Bruce Terminix Cos. v. Dobson.628 So.2d 354 (Ala. 1993). This Court in Dobson issued a similar opinion affirming the circuit court's order. Id. Terminix filed an application for rehearing, which this Court denied on September 24, 1993.
On December 22, 1993, Terminix petitioned the United States Supreme Court for a writ of certiorari in both cases. The Supreme Court granted both petitions, to review whether this Court had erred in determining that the "Termite Protection Plans" at issue were not contracts involving interstate commerce within the meaning of the FAA. The Court issued its ruling on January 18, 1995, holding that in enacting the FAA Congress had intended to exercise the full scope of its authority under the Commerce Clause of the United States Constitution and that the FAA applies to contracts, such as the Termite Protection Plan at issue in this case, that involve commerce in fact. Allied-Bruce TerminixCos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753
(1995).
Based on its holding in Dobson, the Supreme Court vacated this Court's decision in this case and remanded the cause to this Court for further consideration. Terminix Int'l Co. Ltd.Partnership v. Jackson, 513 U.S. 1123, 115 S.Ct. 930,130 L.Ed.2d 876 (1995). On November 3, 1995, in accordance with the direction of the Supreme Court, this Court issued an opinion reversing the circuit court's order denying the motion to compel arbitration and remanding the case for the circuit court to reconsider the motion to compel arbitration and to stay litigation pending arbitration, in light of the Supreme Court's decision in Dobson. See Terminix Int'l Co. Ltd. Partnership v.Jackson 669 So.2d 893 (Ala. 1995).
On remand, Terminix filed in the circuit court a "Renewed Motion to Compel Arbitration." In addition, George Battle and George Massey filed a "Motion to Compel Arbitration, " seeking arbitration of all of the plaintiffs' claims against them.
Each of the parties filed briefs in support of their positions, and on April 2, 1997, the circuit court entered an order granting all of the defendants' motions to compel arbitration with respect to the plaintiffs' claims of breach of contract and fraud in the inducement to enter into the Termite Protection Plan, but *Page 560 
the court found that the plaintiffs' negligence and fraud claims, to the extent that they related to the plaintiffs' purchase of their house, were not arbitrable. After the trial court refused to change its ruling, the defendants appealed.
The sole issue in this case is whether the arbitration agreement, which provides in part that "any controversy or claim between [the parties] arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration," is broad enough to include the negligence and fraud claims that the plaintiffs have filed against the defendants. I believe that it is, and I believe that this Court's decision in this case shows its continuing hostility to the enforcement of arbitration provisions in contracts that involve interstate commerce, despite the fact that this case has already been considered by the Supreme Court and remanded once.
In Old Republic Ins. Co. v. Lanier, 644 So.2d 1258 (Ala. 1994), in a dissenting opinion, I detailed some of the history of this Court's hostility to arbitration and stated why I thought federal law required the arbitration of the common law tort claims in that case:
 "The majority, applying what it describes as Alabama's strong public policy against arbitration, concludes that the subject agreement does not come within the terms of the FAA. My opinion of what constitutes a dispute arising out of an agreement involving interstate commerce, and, therefore, coming within the provisions of the FAA, has been stated in other cases. See, Ex parte Alabama Oxygen Co., 433 So.2d 1158 (Ala. 1983) (Maddox, J., dissenting); this Courts judgment in that case was vacated by the United States Supreme Court and the cause was remanded to this Court, York International v. Alabama. Oxygen. Co. 465 U.S. 1016, 104 S.Ct. 1260. 79 L.Ed.2d 668 (1984). See this Court's later opinion in Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala. 1984) (on remand from the United States Supreme Court), adopting my dissent in the original proceeding (433 So.2d at 1168) and see Ex parte Costa Head (Atrium, Ltd, 486 So.2d 1272 (Ala. 1986), which I joined."
644 So.2d at 1263-4.
I pointed out in that dissenting opinion that "Congress passed the FAA in 1925 out of a desire to overcome the common-law judicial hostility toward arbitration" and that "[i]n Moses H.Cone Mem. Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24,103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983), the Supreme Court of the United States stated that § 2 of the FAA stands for 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary' and 'creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."' Old Republic, 644 So.2d at 1264.
In that dissenting opinion, I further stated that I was "of the opinion that if the contract involved [was] one involving interstate commerce" and "contain[ed] an arbitration agreement voluntarily entered into by the parties, " then the "federal policy favoring arbitration agreements" should be applied, "notwithstanding what the majority [referred] to as 'our strong public policy against the use of predispute arbitration agreements."' 644 So.2d at 1264. For an analysis of the OldRepublic decision, see, Langford, Alabama Supreme CourtContravenes the Policy of the Federal Arbitration Act: OldRepublic Insurance Co. v. Lanier, 47 Ala. L.Rev. 616 (1996).
The Supreme Court of the United States stated in Moses H. ConeMem. Hospital, 460 U.S. at 24-25, 103 S.Ct. 927, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." The history of this case and of other cases shows that this Court does not apply federal law when interpreting agreements to arbitrate, but in fact interprets the law in such a manner as to frustrate the federal policy.
What has happened before, and what is happening in this case, reminds me of what happened in Doctor's Associates, Inc. v.Casarotto, *Page 561 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), in which franchisees brought an action in a Montana state court against a franchisor and its agent regarding a dispute under a standard form franchise agreement. A district court stayed proceedings pending arbitration, and the franchisees appealed. The Montana Supreme Court, 268 Mont. 369, 886 P.2d 931, reversed, holding that the arbitration clause was unenforceable under a state statute, just as this Court held initially in this case. The United States Supreme Court, 515 U.S. 1129, 115 S.Ct. 2552,132 L.Ed.2d 807 (1995), vacated the state court's judgment and remanded, just as it did in this present case. On remand, the Montana Supreme Court, 274 Mont. 3, 901 P.2d 596 (1995), reaffirmed its prior opinion, holding that the Montana statute was not preempted by the Federal Arbitration Act (FAA). The franchisors again sought review in the United States Supreme Court, and, in an opinion written by Justice Ginsburg, that Court held that the FAA preempted the Montana statute, which conditioned enforceability of an arbitration clause on compliance with Montana's first-page notice requirement, which governed not "any contract," but specifically and solely contracts "subject to arbitration."
The Court stated:
 "In [Dobson], we restated what our decisions in [Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)] and [Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)] had established:
 "`States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. . . . What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service. credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress's intent.' 513 U.S. at 281[, 115 S.Ct. 834].
 "On remand, without inviting or permitting further briefing or oral argument, the Montana Supreme Court adhered to its original ruling. The court stated: 'After careful review, we can find nothing in the [Dobson] decision which relates to the issues presented to this Court in this case.' Casarotto v. Lombardi, 274 Mont. 3, 7, 901 P.2d 696, 598 (1995). Elaborating, the Montana court said it found 'no suggestion in [Dobson] that the principles from Volt on which we relied [to uphold § 27 5-114 (4)] have been modified in any way.' Id. [274 Mont.] at 8, 901 P.2d at 598-599. We again granted certiorari, 516 U.S. 1036, 116 S.Ct. 690, 133 L.Ed.2d 594 (1996), and now reverse."
Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 684-86,116 S.Ct. 1652, 1655-56 (1996) (footnote omitted).
Although in this case this Court does not affirm its prior decision without benefit of briefs or arguments, as the Montana Supreme Court did in Casarotto, the effect of what this Court now does is the same as the effect in Casarotto. That effect is, I believe, the frustration of the federal policy favoring arbitration.
Based on the foregoing, I cannot agree with the majority's interpretation of the language of the arbitration clauses or its conclusion regarding the issue of alleged waiver, and I cannot agree to deny the benefits of the FAA to defendants who assert an entitlement to those lights based on a broad arbitration clause in a contract that clearly involves interstate commerce. Consequently, I respectfully dissent.
HOOPER, C J, and SEE, J., concur.