No. 3--09--0910

Filed June 9, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | |
|---|---|
| R.A BRIGHT CONSTRUCTION, INC.,)<br>an Illinois Corporation, ) | Appeal from the Circuit Court<br>of the 12th Judicial Circuit |
| ) | Will County, Illinois |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | No. 08--L--905 |
| ) | |
| WEIS BUILDERS, INC., a ) | |
| Minnesota Corporation, ) | |
| ) | Honorable Barbara Petrungaro, |
| Defendant-Appellant. ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

Plaintiff, R.A. Bright Construction, Inc. (Bright), brought this breach of contract action against defendant, Weis Builders, Inc. (Weis), in the circuit court of Will County. Defendant filed a motion to dismiss or, in the alternative, to stay the action and compel arbitration. The trial court denied Weis's motion. Weis filed this interlocutory appeal, claiming the trial court erred when denying its motion to compel arbitration.

BACKGROUND

Weis entered into a contract with Wal-Mart Stores, Inc., for the construction of a Wal-Mart Supercenter store in Lockport,

Illinois. Weis is a Minnesota corporation that maintains offices in four states. Weis, as general contractor, engaged Bright to act as a subcontractor to perform concrete work and underground utilities work on the project. Bright is an Illinois corporation with its principle place of business in Plainfield, Illinois. Around October 20, 2006, Bright and Weis entered into a written subcontract agreement wherein Bright agreed to perform the concrete work for $2,930,000. Around November 14, 2006, Weis and Bright entered into a second written subcontract agreement wherein Bright agreed to perform the underground utilities work for $679,567. The record is clear that both subcontract agreements were properly signed by each party. There are no allegations of fraud or misrepresentations leading to the formation of these contracts. From the record, it appears that each party freely entered into the contracts with full knowledge of the contractual terms and conditions.

A dispute between the parties arose in which Bright claimed it was owed $765,701 under both contracts. Weis denies that Bright is entitled to these monies. On November 18, 2008, Bright sued. In response, Weis filed a "motion to dismiss and compel arbitration or, alternatively, to stay proceedings and to compel arbitration," claiming that the Federal Arbitration Act (FAA) (9 U.S.C. §1 *et seq.* (2006)) mandated arbitration of this matter. Before Weis's motion could be heard, Bright filed an amended

complaint seeking to foreclose a mechanics lien against Wal-Mart in the disputed amount. Thereafter, hearings were held on Weis's motion.

The trial court took the matter under advisement, then on October 14, 2009, denied Weis's motions. This interlocutory appeal followed.

ANALYSIS

Our standard of review is *de novo*. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 847 N.E.2d 99 (2006). Concerning the substance of this appeal, Weis argues that the trial court erred by failing to compel arbitration. Specifically, Weis notes that section 2 of the FAA has been interpreted by our supreme court to compel "judicial enforcement of arbitration agreements 'in any *** contract evidencing a transaction involving commerce.'" *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d at 142, 847 N.E.2d at 103, quoting 9 U.S.C. §2 (1994). Therefore, Weis concludes, section 2 of the FAA mandates this matter proceed to arbitration.

Bright disagrees. Initially, Bright claims the FAA is not applicable to this matter for two reasons. First, Bright argues the FAA only applies to matters affecting interstate commerce and since its activity was solely intrastate, the FAA is not applicable. Alternatively, Bright contends that even if we find its activity involved interstate commerce and that the clause was

3

indeed an arbitration clause, the trial court's denial of Weis's motion was still proper.  This is so, Bright argues, as the applicable clause violates the Illinois Building and Construction Contract Act  (815 ILCS 665/1 *et seq*. (West 2006)).

The FAA states, "A written provision in *** a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2 (2006).

In *Malena*, after noting that it was called upon to apply the FAA, our supreme court stated that when "construing a federal statute, we generally look to federal decisions for its interpretation of the statutory provisions." *Melena*, 219 Ill. 2d at 141, 847 N.E.2d at 103.  The first step of analysis taken by the *Malena* court, after briefly mentioning the FAA's history and purpose, focused on the language in section 2 of the FAA that makes it applicable only when an arbitration clause exists "'in any *** contract evidencing a transaction involving commerce.'" *Malena*, 219 Ill. 2d at 142, 847 N.E.2d at 103, quoting 9 U.S.C. §2 (1994).  Likewise, we must first determine whether the contract at issue involves commerce.

The United States Supreme Court has noted the FAA was

4

enacted pursuant to Congress's substantive power to regulate interstate commerce and admiralty (*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801 (1967)) and that it is preemptive of state laws hostile to arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 79 L. Ed. 2d 1, 1045 S. Ct. 852 (1984). The court has found that the words "involving commerce" in section 2 of the FAA "signal[ ] an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 130 L. Ed. 2d 753, 763, 115 S. Ct. 834, 841 (1995).

We find *Allied-Bruce* to be particularly instructive to this matter. *Allied-Bruce* involved a suit from a homeowner claiming that Allied-Bruce failed to fulfil its contractual obligation to keep a home free from termite damage. *Allied-Bruce Terminix Cos. v. Dobson*, 628 So. 2d 354, 355 (Ala. 1993). Allied-Bruce moved to stay the lawsuit and compel arbitration pursuant to an arbitration clause in the contract. *Allied-Bruce*, 628 So. 2d at 355. Allied-Bruce argued that "because they are out-of-state entities, and because some of the materials used in fulfilling their duties imposed by the termite bond were brought into Alabama from out-of-state, the bond has at least a 'slight nexus' with interstate commerce" and, as such, section 2 of the FAA in conjunction with the arbitration clause in the bond mandates that the matter proceed to arbitration. *Allied-Bruce Terminix Cos. v.*

5

*Dobson*, 628 So. 2d 354, 355 (Ala. 1993).

The Alabama Supreme Court disagreed. The court found that the proper standard to employ for determining whether a contract evidences a transaction involving commerce was "'not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity." (Emphasis omitted.) *Allied-Bruce*, 628 So. 2d at 355, quoting *Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 387 (2d Cir. 1961) (Lombard, J., specially concurring). The Alabama court found that the parties contemplated a transaction that was primarily local and not substantially interstate, and as such, the contract was not one evincing a transaction involving commerce within the meaning of section 2 of the FAA. *Allied-Bruce*, 628 So. 2d at 357.

The United States Supreme Court rejected the "contemplation of the parties" approach used by the Alabama court, instead finding that a "commerce in fact" analysis was "more faithful to the statute." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 278, 130 L. Ed. 2d 753, 767, 115 S. Ct. 834, 841 (1995). The Court noted that it "accept[s] the 'commerce in fact' interpretation, reading the [FAA's] language as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce

6

connection." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 130 L. Ed. 2d 753, 769, 115 S. Ct. 834, 843 (1995). The Court concluded:

> "The parties do not contest that the transaction in this case, in fact, involved interstate commerce. In addition to the multistate nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama.
>
> Consequently, the judgment of the Supreme Court of Alabama is reversed ***." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 282, 130 L. Ed. 2d 753, 769, 115 S. Ct. 834, 843 (1995).

While Bright contests that the transaction involved interstate commerce, there is no doubt that this transaction does, in fact, involve interstate commerce or, at the least, has a slight nexus to interstate commerce. The record on appeal includes a document completed by Bright, dated November 14, 2006, indicating that it purchased $77,228 worth of materials from County Materials of Marathon, Wisconsin. Bright has supplemented

7

the record with documents that indicate it actually acquired $82,732.54 worth of materials from County Materials. The parties dispute whether Bright has properly supplemented the record. Assuming, *arguendo*, that Bright has properly supplemented the record with information indicating that the materials supplied by County Materials were "generated" from Illinois facilities, that does not change the fact that a Wisconsin corporation supplied a significant amount of materials for Bright. Bright does not deny that County Materials is an out-of-state corporation or that County Materials was paid a significant sum for materials it supplied for this job.

Furthermore, also like Allied-Bruce, the multistate nature of one of the parties to the contract (Weis Builders) cannot be denied. Weis is a Minnesota corporation with offices in four states. We find the agreement between Bright and Weis is a contract evincing a transaction involving commerce as contemplated by section 2 of the FAA.

Citing *Kansas City Structural Steel Co. v. State of Arkansas*, 269 U.S. 148, 70 L. Ed. 204, 46 S. Ct. 59 (1925), Bright notes the Court found that "delivery of materials from Missouri to Arkansas for a subcontractor to build a bridge in Arkansas was not interstate commerce." However, this language cannot be reconciled with later Supreme Court cases dealing with the reach of Congress's commerce powers. See *Allied-Bruce*

8

*Terminix Cos. v. Dobson*, 513 U.S. 265, 282, 130 L. Ed. 2d 753, 769, 115 S. Ct. 834, 843 (1995). Moreover, the ultimate holding of the *Kansas City Structural Steel* case was that a Missouri corporation could not use the commerce clause to invalidate an Arkansas statute requiring every out-of-state corporation doing business in Arkansas to file a certificate with the Secretary of State identifying a general office and place of business in Arkansas, as well as an agent authorized to be served within the state. *Kansas City Structural Steel Co. v. State of Arkansas*, 269 U.S. 148, 70 L. Ed. 204, 46 S. Ct. 59 (1925).

*Kansas City Structural Steel* is a pre-New Deal commerce clause case. It is beyond debate that following the 1937 case of *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 81 L. Ed. 893, 57 S. Ct. 615 (1937), courts have rapidly expanded the commerce clause's reach. See *United States v. Darby*, 312 U.S. 100, 85 L. Ed. 609, 61 S. Ct. 451 (1941); *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 86 L. Ed. 726, 62 S. Ct. 523 (1942); *Wickard v. Filburn*, 317 U.S. 111, 87 L. Ed. 122, 63 S. Ct. 82 (1942).

This expansion continued during the civil rights movement with the Court declaring that whether a person could sit at a local lunch counter so substantially affected interstate commerce that Congress could regulate the matter under its commerce clause authority. *Katzenbach v. McClung*, 379 U.S. 294, 13 L. Ed. 2d

9

290, 85 S. Ct. 377 (1964); see also *Heart of Atlanta Motel, Inc., v. United States*, 379 U.S. 241, 13 L. Ed. 2d 258, 85 S. Ct. 348 (1964).

In *Katzenbach*, the Court acknowledged that the volume of food supplied to Ollie's Barbecue ($70,000) from out-of-state sources "was insignificant when compared with the total foodstuffs moving in commerce." *Katzenbach v. McClung*, 379 U.S. 294, 300-01, 13 L. Ed. 2d 290, 296, 85 S. Ct. 377, 382 (1964). Nevertheless, citing to *Wickard v. Filburn*, the Court reiterated that while an individual transaction may be trivial by itself and seemingly purely local, that "'is not enough to remove him from the scope of federal legislation where, as here, his contribution, taken together with that of many others similarly situated, is far from trivial.'" *Katzenbach v. McClung*, 379 U.S. 294, 301, 13 L. Ed. 2d 290, 296, 85 S. Ct. 377, 382 (1964), quoting *Wickard v. Filburn*, 317 U.S. 111, 127-28, 87 L. Ed. 122, 136, 63 S. Ct. 82, 90 (1942). Undoubtedly, when considering all those similarly situated to Bright, which uses materials supplied by out-of-state corporations to help build national retail stores, the effect on interstate commerce is far from trivial.

Bright claims that even if we find this matter evinces a transaction involving commerce, denial of Weis's motion was still proper. Bright comes to this conclusion by reasoning that section 2 of the FAA allows for consideration of its contract

10

defenses, namely, *forum non conveniens* and its assertion that the Illinois Building and Construction Contract Act prohibits enforcement of the clause.  Bright also argues that the clause at issue is a forum selection clause, not an arbitration clause, and, therefore, outside the reach of the FAA.  We disagree.

Bright correctly notes that section 2 of the FAA allows a party to raise contract defenses if they are based "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2 (2006).  Numerous courts have interpreted the meaning of this provision in the FAA.

In *OPE International LP v. Chet Morrison Contractors, Inc*., 258 F.3d 443 (5th Cir. 2001), the court concluded that a Louisiana statute was preempted by the FAA because it conditioned the enforceability of arbitration agreements on selection of a Louisiana forum, a requirement not applicable to contracts generally.  *OPE*, 258 F.3d at 447.  The contract at issue in *OPE* stated:

> "*** [I]f any question, dispute or difference
> shall arise between CONTRACTOR and
> SUBCONTRACTOR, and the parties cannot
> mutually agree on a resolution thereof, then
> the Parties agree that such question, dispute
> or difference shall be finally settled by
> arbitration in Houston, Texas, or in such

11

other location as may be mutually agreed, in accordance with the Construction Industry Rule of the American Arbitration Association with a single arbitrator." *OPE*, 258 F.3d at 445.

The subcontractor filed suit seeking damages and a declaration that the subcontract's arbitration clause, forum selection clause and choice-of-law provision violated public policy and were therefore void. The subcontractor supported this argument by quoting a Louisiana statute that read:

"'A. The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.

12

B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract *** which either:

(1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state.'" *OPE*, 258 F.3d at 446, quoting La. Rev. Stat. Ann. §9:2779.

The *OPE* court held that the Louisiana "statute directly conflicts with [section] 2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contract generally. [Citation.] The FAA therefore preempts the Louisiana statute ***. Accordingly, we conclude that the district court properly compelled the parties to submit to arbitration." *OPE*, 258 F.3d at 447-48. This holding is consistent with those of other federal appellate circuits. See *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42 (1st Cir. 1999) (Rhode Island statute that rendered unenforceable any provision in a franchise agreement that restricted jurisdiction or venue to a forum outside Rhode Island was not applicable to all contracts generally and therefore the statute was preempted by the FAA); *Bradley v. Harris Research, Inc.*, 275 F.3d 884 (9th Cir. 2001)

13

(FAA preempts California statute that declared void any provision in a franchise agreement restricting venue to a forum outside California).

The similarities between *OPE* and this matter are striking. The agreement between Bright and Weis states that, unless the parties agree otherwise:

> "Any dispute arising out of or related to this subcontract, *** shall at contractor's sole discretion *** (c) be settled by arbitration venued in Hennepin County, Minnesota in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment rendered upon the award may be entered in any court having jurisdiction thereof."

Like the Louisiana legislature, our legislature has declared that any "provision contained in or executed in connection with a building and construction contract to be performed in Illinois that makes the contract subject to the laws of another state or that requires any litigation, arbitration, or dispute resolution to take place in another state is against public policy. Such a provision is void and unenforceable." 815 ILCS 665/10 (West 2008). This declaration by the legislature is not applicable to all contracts generally, but only to contracts involving building

14

and construction.  Therefore, we find the FAA preempts the Illinois Building and Construction Contract Act (815 ILCS 665/1 *et seq.* (West 2006)).  This finding is consistent with the recent case from our supreme court that holds the antiwaiver provisions of the Nursing Home Care Act (210 ILCS 45/3--606, 3--607 (West 2006)) are preempted by the FAA.  *Carter v. SSC Odin Operating Co.,* No. 106511 (Il April 15, 2010) (holding the language in section 3--606 of the Nursing Home Care Act (210 ILCS 45/3--606 (West 2006)) that states any "waiver by a resident *** of the right to commence an action under [this Act] *** shall be null and void, and without legal force or effect," while a statement of Illinois public policy, was not a defense applicable to all contracts generally; therefore, the antiwaiver provisions of the Nursing Home Care Act were preempted by the FAA and could not be used to avoid arbitration).

Finally, Bright claims that the doctrine of *forum non conveniens* is applicable to all contracts generally and, therefore, section 2 of the FAA does not prohibit Bright from asserting that, under the doctrine, this matter should be adjudicated in Illinois.  We disagree.  Section 2 of the FAA allows for pleading contract defenses "as exist at law or in equity <u>for the revocation of any contract</u>."  (Emphasis added.)  9 U.S.C. §2 (2006).  *Forum non conveniens* is an equitable doctrine that presupposes the existence of more than one forum with

15

jurisdiction over the parties and the subject matter. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 554 N.E.2d 209 (1990). *Forum non conveniens* is not a contract defense, but merely a procedural mechanism employed to transfer a case to a forum in which adjudication "can be had more conveniently." *Olsson v. General Motors Corp.*, 318 Ill. App. 3d 87, 90, 742 N.E.2d 1251, 1254 (2001). Therefore, we hold *forum non conveniens* is an improper basis to deny defendant's motion to stay the proceedings and compel arbitration.

In the mechanics lien action against Wal-Mart, Bright seeks the same funds it seeks in its contract dispute with Weiss. Common sense requires that action be stayed pending arbitration.

We reverse the order of the trial court and remand with directions to enter a stay of the proceedings below and compel arbitration.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and this cause is remanded with direction.

Reversed and remanded with directions.

LYTTON, J., concurs

JUSTICE McDADE, dissenting:

The majority has found that "the agreement between Bright and Weis is a contract

16

evincing a transaction involving commerce as contemplated by section 2 of the FAA" (slip order at 8) and that "the FAA preempts the Illinois Building and Construction Act" (slip order at 14). The majority has also held that "*forum non conveniens* is an improper basis to deny defendant's motion to stay the proceedings and compel arbitration" (slip order at 16). Although I agree that the FAA preempts the Illinois Building and Construction Act, I do not agree with the finding that this agreement evinces a transaction involving interstate commerce. Because I would find that the FAA does not apply, I would not reach Bright's argument that under the doctrine of *forum non conveniens*, this matter should be adjudicated in Illinois. Slip order at 15.

Nothing beyond "the multistate nature of one of the parties" (slip order at 8) demonstrates that the transaction "in fact" involved interstate commerce. See slip order at 6. Further, nothing in *Allied-Bruce* suggests that the Supreme Court would find the interstate nature of the parties sufficient to hold that a transaction "in fact" involves interstate commerce. The *Allied-Bruce* court wrote that "*[i]n addition* to the multi state nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama." (Emphasis added.) *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 282, 130 L. Ed. 2d 753, 769, 115 S. Ct. 834, 843 (1995). The majority does not find that the materials "in fact" moved interstate, only that the corporation selling product intrastate is an out-of-state corporation. Slip order at 8.

The majority, therefore, relies only on the interstate nature of the parties for its finding

that "the agreement *** is a contract evincing a transaction involving commerce ***." Slip order at 8. However, the federal court has, since *Allied-Bruce*, found that the interstate nature of the parties is not sufficient to find that a contract involves interstate commerce. In *Cecala v. Moore*, 982 F. Supp. 609, 611-612 (N.D. Ill., 1997), the district court held that the FAA did not apply because the contract in question did not evince a transaction involving interstate commerce. There, the seller of real estate was located outside Illinois, but there was no evidence that transactions incident to the sale took place outside Illinois. See also *Becker v. Amoco Pipeline Co.*, No. 89 C 1732 (N.D. Ill. Sept. 25, 1989) ("the language of section 2 means that the transaction which is the subject of the contract containing the arbitration provision must itself involve interstate commerce. It is not enough that one party's business in general involves interstate activity").

I would also note that *Katzenbach* is distinguishable because, although "insignificant when compared with total foodstuffs moving in commerce" (slip order at 10) *some* of the food supplied to Ollie's Barbecue was "from out-of-state" (slip order at 10). None of the materials supplied to Bright were from out-of-state.

I would hold that the contract does not involve interstate commerce and, therefore, that the FAA does not apply. Accordingly, I dissent.