Opinion issued August 29, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01034-CV

————————————

**IRVING DROBNY, AS REPRESENTATIVE OF NATIONAL ACCIDENT INSURANCE GROUP AND NATIONAL ACCIDENT INSURANCE UNDERWRITERS, Appellant**

**V.**

**AMERICAN NATIONAL INSURANCE COMPANY, Appellee**

---

### On Appeal from the 405th District Court
### Galveston County, Texas
### Trial Court Case No. 12CV1131

---

## MEMORANDUM OPINION

In this interlocutory appeal, appellant, Irving Drobny, as representative of

National Accident Insurance Group ("NAIG") and National Accident Insurance

Underwriters ("NAIU"), challenges the trial court's orders granting appellee,

American National Insurance Corporation ("ANICO"), a temporary injunction and its motion to compel arbitration. In three issues, Drobny contends that the trial court lacked the authority to override the parties' selection of arbitrators; intrude on an incomplete, ongoing arbitration; and substitute its procedure for the procedure provided for in the arbitration agreement.

We dismiss Drobny's appeal of the trial court's order compelling arbitration and affirm the trial court's order granting ANICO's temporary injunction.

## Background

In 1998, NAIU and ANICO entered into an Underwriting Agreement, which authorized NAIU to market, underwrite, issue, and collect premiums for insurance underwritten and issued by ANICO. NAIU also held premiums for ANICO in a fiduciary capacity under the agreement. In 2001, the parties discovered that Robert Carter, a NAIU vice president, had diverted premium payments on legitimate ANICO policies and created and sold counterfeit insurance policies that were not written by ANICO. The parties dispute whether NAIU is entitled to commissions and fees from the premium funds stolen by Carter and the counterfeit policies. And they entered into a "Cease Fire and Tolling Agreement" to toll the statute of limitations during other litigation that ensued from Carter's misdeeds.

The Underwriting Agreement for NAIU's services contained an arbitration clause which provided:

2

A.     Except for disputes as to which specific performance, injunctive relief or other equitable relief pursuant to ARTICLE XXII of this Agreement is sought, all disputes arising from the interpretation or performance of this Agreement shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire, meeting in Galveston, Texas unless otherwise agreed.

B.     The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies domiciled in the United States other than the parties or their affiliates. Each party shall appoint its arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing.  If the respondent fails to appoint its arbitrator within four weeks after being requested to do so by the claimant, the latter shall also appoint the second arbitrator.  If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations, each of them shall name three, of whom the other shall decline two and the decision shall be made by drawing lots.

C.     The claimant shall submit its initial statement within twenty days from appointment of the umpire.  The respondent shall submit its statement within twenty days after receipt of the claimant's statement, and the claimant may submit a reply statement within ten days after receipt of the respondent's statement.

D.     The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business.  The board shall issue its decision in writing upon evidence introduced at a hearing or by other means of submitting evidence in which strict rules of evidence need not be followed, but in which cross examination and rebuttal shall be allowed if requested.  The board shall make its decision within forty-five days following the termination of the hearing unless the parties consent to an extension.  The majority decision of the board shall be final and binding upon all parties of the proceeding.  Judgment may be entered upon the award of the board in any court having jurisdiction thereof.

E.     The expense of the arbitrators and of the arbitration shall be equally divided between the parties to the arbitration.

3

On March 9, 2012, NAIU requested arbitration and ANICO cross-demanded arbitration. NAIU appointed Terry Pyle as its arbitrator, and ANICO appointed Robert Mangino. The two arbitrators did not agree on the appointment of an umpire.

NAIU named its three umpire nominees on April 6, 2012. Despite protesting that the two arbitrators had not had the full four weeks to agree on an umpire, ANICO named its umpire nominees on April 25, 2012. Although ANICO sought to have a questionnaire submitted to the umpire nominees to determine any conflicts, NAIU refused, insisting that the parties use only publically-available information to determine conflicts. NAIU also asserted that ANICO untimely named its umpire nominees, making them ineligible.

ANICO argued that one of NAIU's umpire nominees was disqualified because he was not an "active or retired disinterested official of insurance or reinsurance companies domiciled in the United States." In turn, NAIU argued that one of ANICO's umpire nominees was disqualified because of a conflict. And NAIU refused to agree to both sides replacing these objected-to umpire nominees. Asserting that one of ANICO's candidates was disqualified due to a conflict, NAIU stated that it would use its two strikes to eliminate NAICO's other two nominees; ANICO objected, asserting that NAIU was using an "impermissible third strike." NAIU insisted that ANICO exercise its two strikes against NAIU's

4

three umpire nominees, even though ANICO objected that one of NAIU's nominees was unqualified. Consequently, ANICO used one of its two strikes against the NAIU umpire nominee that it asserted was unqualified. This left NAIU's remaining umpire nominee, Isabelle Arnold, who it declared the umpire. ANICO objected to Arnold and refused to acknowledge the authority of the board of arbitration on the ground that the board had not been constituted in accord with the arbitration clause.

On May 18, 2012, Arnold recused herself due to a "health issue" and because ANICO had "contested" her position as umpire. Pyle and Mangino then agreed on another umpire, but NAIU then "reinstated" Arnold as the umpire, even though ANICO asserted that she had not been properly appointed. On October 14, 2012, Pyle sent to Mangino an email stating that Arnold would proceed as the umpire. On October 23, 2012, Pyle sent to Mangino another email, requiring that the parties submit "all documentary" evidence by November 15, 2012 and setting the arbitration hearing in Tampa, Florida on November 26, 2012.

In April 2012, Drobny filed a declaratory judgment action, seeking a declaration that the Underwriting Agreement is governed by Illinois law, procedurally and substantively, and is not enforceable because it lacks consideration; NAIU had not breached any contractual obligation to ANICO; the arbitration demand was timely made; the arbitration clause required ANICO to

5

designate its nominees for umpire by April 6, 2012; ANICO had failed to timely designate its umpire candidates; and ANICO had waived its right to designate umpire nominees.

In its answer, ANICO generally denied Drobny's allegations and argued that Drobny is not entitled to relief on issues subject to the arbitration clause, such as the determination of breach of contract, because "such claims must be submitted to a duly constituted arbitration panel of active or retired officials of insurance or reinsurance companies domiciled in the United States as provided by the terms of the Agreement." ANICO asserted that "NAIU ha[d] not complied with the terms of the [Underwriting] Agreement and no arbitration Board ha[d] been appropriately constituted," and it counterclaimed, seeking a stay of arbitration until the trial court considered the issues. ANICO also sought a declaration as to whether the arbitration clause is valid and enforceable and the parties' substantive dispute is subject to the arbitration clause; the umpire nominees qualify under the terms of the arbitration clause; NAIU must withdraw unqualified nominees and substitute qualified nominees; ANICO had timely named its umpire nominees; and ANICO's counter-demand for arbitration was timely. It also sought a court order requiring complete disclosure by the umpire nominees; a declaration concerning the method to be used for drawing lots under the arbitration clause; and an award of attorneys' fees.

6

Before ANICO filed its answer, Drobny filed a "Motion for Prospective Injunction," seeking an order "requiring . . . ANICO to comply with its prior Agreement and Cease Fire Agreement." *See* TEX. R. CIV. P. 683. In the motion, Drobny argued that the trial court had subject matter jurisdiction under the Texas Declaratory Judgment Act because a "question of construction arising under the Agreement and Cease Fire Agreement exists." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–37.011 (Vernon 2008). Specifically, Drobny asked the trial court to declare that ANICO's counterclaim is barred by limitations and its nomination of umpires was untimely, and, therefore, waived. Drobny also asked for "[s]uch other orders as the Court sees fit to direct the 'drawing of lots.'"

ANICO subsequently filed a motion for a temporary restraining order, for a temporary injunction, and to compel arbitration, asserting that NAIU had "hijacked the arbitration," should be "enjoined from proceeding any further in the arbitration until the umpire selection process can be determined by the court," and "should be compelled to proceed with arbitration in accordance with the terms of the Arbitration Agreement." ANICO further asserted that it would be irreparably harmed if forced to "participate in a sham arbitration that is final and binding on the parties with an arbitration panel that was not properly selected under the terms of the parties' agreement."

7

The trial court granted ANICO's motion for a temporary injunction, finding "that NAIU intends to arbitrate, submit evidence, participate in an arbitration hearing, or otherwise act in an arbitration proceeding, seeking an adjudication, declaration, or other type of relief related in [] the umpire selection process dispute presently before the Court . . . before the Court can render judgment in this cause." The trial court ordered that NAIU "desist and refrain" from arbitrating, litigating, or "taking any other type of action," including "conducting an arbitration hearing" or seeking an adjudication or relief related "to the umpire selection dispute presently before this Court."

The trial court also entered an order compelling arbitration, finding:

    a.    A valid, enforceable arbitration agreement exists between the parties;

    b.    The parties' dispute regarding the alleged breaches of the National Accident Insurance Group Participation and Underwriting Agreement between them are covered by the parties' arbitration agreement;

    c.    Irving Drobny, as representative of NAIU and NAIC (collectively, "NAIU") has refused to participate in the arbitration by failing to participate in the umpire selection process as required by the arbitration agreement.

The trial court ordered NAIU to participate in arbitration and, specifically, to participate in umpire selection as provided in the arbitration clause by:

    a.    Permitting the currently selected party-appointed arbitrators four weeks to attempt to reach an agreement on the arbitration umpire, including permitting them to send out any

8

disclosure questionnaires they deem appropriate before naming an umpire;

     b.     Naming three umpire candidates that are "active or retired disinterested officials of insurance or reinsurance companies domiciled in the United States . . . ," not merely candidates "in the business of insurance," within one week after the deadline for the party-appointed arbitrators to reach an agreement has passed with no agreement between the party-appointed arbitrators;

     c.     Submitting an agreed upon questionnaire to each umpire candidate (including those named by American National) to determine if any candidate has any conflict of interest;

     d.     Striking two, and only two, of American National's candidates within ten (10) days—or any other time agreed to by the parties—after both parties receive the questionnaire from the last umpire candidate;

     e.     Refraining from ex parte communications with any umpire candidate; and

     f.     Participating in the "drawing of lots" with respect to the last two remaining candidates.

In this appeal, Drobny asserts that the trial court's orders halted the ongoing arbitration and disbanded the empaneled arbitration board. ANICO asserts in response that the trial court properly enjoined NAIU's "sham proceeding" and "ordered NAIU to arbitrate pursuant to the contract." ANICO further argues that the trial court had the authority to enter the temporary injunction and order compelling arbitration in part because "both parties placed their umpire dispute before the trial court for resolution."

9

**Appellate Jurisdiction**

Drobny asserts that this Court has jurisdiction to consider this interlocutory appeal based on the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(2) (Vernon 2011). Alternatively, Drobny argues that we have jurisdiction over the Order Compelling Arbitration because it is an order "demanding a rearbitration." *See East Tex. Salt Water Disposal Co., v. Werline* 307 S.W.3d 267, 272 (Tex. 2010).[1] ANICO agrees that we have jurisdiction to review the trial court's interlocutory order granting a temporary injunction, but it challenges our jurisdiction to consider the order compelling arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2012) (allowing interlocutory review of an order that "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65"). We agree that we have jurisdiction to review the trial court's interlocutory order granting the temporary injunction, but we conclude that we lack jurisdiction to review the trial court's interlocutory order compelling arbitration.

The Underwriting Agreement provides that it "shall be construed and interpreted in accordance with the laws of the State of Illinois," and both parties

---

[1] In *Werline*, the Texas Supreme Court, based on its analysis of the Texas Arbitration Act, found interlocutory appellate jurisdiction because the parties had submitted competing motions for confirmation and vacatur of an arbitration award. 307 S.W.3d at 268. However, the Texas Arbitration Act is not applicable to this case as discussed below.

asserted in their pleadings to the trial court that the Underwriting Agreement is governed by Illinois law, including the Illinois Uniform Arbitration Act ("IUAA"). *See* 710 ILL. COMP. STAT. 5/1 *et seq.* (West 2012). Because the Underwriting Agreement implicates interstate commerce, we conclude, under federal and Illinois law, that the Federal Arbitration Act ("FAA") applies.

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349, 128 S. Ct. 978, 981 (2008). The Illinois Supreme Court has interpreted section two of the FAA to compel "judicial enforcement of arbitration agreements 'in any . . . contract evidencing a transaction involving commerce.'" *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 103 (Ill. 2006). The United States Supreme Court has noted that the FAA was enacted based on Congress's power to regulate interstate commerce and admiralty and it preempts those state laws that are hostile to arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 411, 87 S. Ct. 1801, 1810 (1967). And words "involving commerce" in section two of the FAA "signal[] an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 841 (1995). In determining whether the FAA applies, the Supreme Court employs a "commerce in fact" analysis. *See id.* at 281, 115 S. Ct. at 843.

11

Here, the Underwriting Agreement involved business services between NAIU, a corporation operating in Illinois, and ANICO, a corporation headquartered and operating in Galveston, Texas. NAIU marketed and solicited insurance policies for ANICO and provided information to, and collected premiums from, insureds across the country. The multistate nature of the parties and their business transaction evidenced in the Underwriting Agreement cannot be denied. *See R.A. Bright Constr., Inc. v. Weis Builders, Inc*., 930 N.E.2d 565, 569 (Ill. App. Ct. 2010). Accordingly, we conclude that the agreement between NAIU and ANICO is a contract evidencing a transaction involving commerce as contemplated by section two of the FAA. 9 U.S.C. § 2 (2006) ("a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . ." ).

We note that the preemption doctrine is derived from the Supremacy Clause of Article VI of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., art. VI, cl. 2; *see also Carter v. SSC Odin Operating Co.,* 927 N.E.2d 1207, 1214 (Ill. 2010). Thus, state law will be null and void if it conflicts with federal law.

*Carter*, 927 N.E.2d at 1214; *Sprietsma v. Mercury Marine*, 757 N.E.2d 75, 79 (Ill. 2001).

The United States Supreme Court has consistently held that the FAA applies in state as well as federal courts and preempts conflicting state laws. *Volt Info. Sciences, Inc. v. Bd. Of Trustees*, 489 U.S. 468, 477, 109 S. Ct. 1248, 1255 (1989) (state law is preempted by the FAA to the extent that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

Because the FAA applies to the Underwriting Agreement and operates to preempt any conflicting state laws, we need not decide whether the Texas Arbitration Act or the Illinois Uniform Arbitration Act applies. Additionally, we note that the parties have not cited any conflicting Illinois state cases or statutes that provide for an interlocutory appeal of an order compelling arbitration. Because any conflicting Illinois or Texas law would be preempted if it conflicted with the FAA, we proceed with our analysis under the FAA, which expressly prohibits interlocutory appeals of an order "directing [an] arbitration to proceed." 9 U.S.C. § 16(b)(2)–(3) (2006). Accordingly, we hold that we do not have jurisdiction to consider the trial court's order compelling arbitration.

Unless specifically authorized by a statute, Texas appellate courts only have jurisdiction to review final judgments. *See* TEX. CIV. PRAC. & REM. CODE ANN.

13

§ 51.014; *Bison Bldg. Materials, Ltd. v. Aldridge*, No, 06-1084, 2012 WL 3870493, at *3 (Tex. Aug. 17, 2012). However, the Texas Civil Practices and Remedies Code grants us jurisdiction to hear an appeal of a trial court's interlocutory order granting or refusing a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). Accordingly, we hold that we do have jurisdiction to consider the trial court's temporary injunction.

## Temporary Injunction

The decision to grant or deny a temporary injunction lies in the discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). Because this is an interlocutory appeal, this Court's review is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in granting ANICO's application for a temporary injunction, and we do not address the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978). In making this determination, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002). A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co*., 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009,

14

no pet.). We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Id.* (citing *Davis*, 571 S.W.2d at 862).

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *See Butnaru*, 84 S.W.3d at 204. Drobny does not articulate specific reasons as to how the trial court abused its discretion in granting ANICO's motion for a temporary injunction. Instead, Drobny asserts generally that the trial court did not have the authority to so act.[2] Drobny's only complaint specific to the temporary injunction order is that it "halts an ongoing arbitration." ANICO argues that because Drobny "agreed to the trial court's authority to hear the umpire-selection dispute when [she] filed [her] original and amended petition" and sought injunctive relief, we should give effect to the agreement of the parties.

Having concluded that NAIU was attempting to move forward with the arbitration before the trial court had the opportunity to decide on the umpire-selection dispute that was before it, the trial court simply enjoined NAIU from moving forward in the arbitration process. In other words, the temporary

---

[2] The majority of Drobny's appellate argument does not concern the temporary injunction order, which does not address the umpire-selection process that is at the heart of the parties' dispute.

15

injunction order maintains the status quo until the trial court can decide the issues in the declaratory judgment actions filed by both parties. Viewing the evidence in the light most favorable to its ruling, we conclude that the trial court acted within its discretion in entering the temporary injunction. *See Butnaru*, 84 S.W.3d at 203.

## Conclusion

To the extent that they address the trial court's entry of a temporary injunction, we overrule Drobny's three issues. We do not reach the portions of Drobny's issues that relate only to the trial court's entry of an order compelling arbitration because it is outside the scope of our jurisdiction in this interlocutory appeal.

We dismiss Drobny's appeal of the trial court's order compelling arbitration, and we affirm the trial court's order granting ANICO's temporary injunction.

Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.